## McMULLEN v. GREEN et al.

(Court of Civil Appeals of Texas. Amarillo. June 22, 1912.)

1. APPEAL AND ERROR (§ 601*)—STATEMENTS OF FACT—COPYING IN TRANSCRIPT.

Under Official Stenographer's Act March 31, 1911 (Laws 1911, c. 119) § 12, providing for the appointment of a stenographer to report the testimony in civil cases in the county court when requested by either party, and providing that in such cases the provisions of that act with respect to the preparation of statements of fact shall apply to statements of fact in causes tried in the county court, on an appeal from a county court in a civil case, the statement of facts should not be copied in the transcript, but the original as filed below should be brought to the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2651–2653; Dec. Dig. § 601.*]

2. APPEAL AND ERROR (§ 601*)—STATEMENTS OF FACT—COPYING IN TRANSCRIPT.

On an appeal from a county court in a civil case it is proper to bring the original statement of facts filed below to the appellate court

instead of copying the statement in the transcript, even if the act of 1909 (Laws 1909, c. 39), instead of the act of March 31, 1911 (Laws 1911, c. 119), applies.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2651–2653; Dec. Dig. § 601.*]

3. LANDLORD AND TENANT (§ 332*)—LIEN FOR RENT—EVIDENCE.

In an action in which the defendant's landlord intervened and claimed a landlord's lien on property attached, evidence *held* to show that his lien was in full force and effect when the writ of attachment was levied.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1363, 1400; Dec. Dig. § 332.*]

4. LANDLORD AND TENANT (§ 328*)—LIEN FOR RENT—RIGHT TO LIEN.

A landlord has no landlord's lien on a crop raised in 1909 for advances made and supplies furnished the same tenant in 1910, nor any other lien unless one is expressly given him by the tenant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1388–1392; Dec. Dig. § 328.*]

5. LANDLORD AND TENANT (§ 332*)—LIEN FOR RENT—EVIDENCE.

Where defendant admitted plaintiff's debt, and the evidence showed conclusively that property attached was raised by the defendant on premises of an intervener, that the relation of landlord and tenant existed between them, that there was an unpaid indebtedness due the landlord for advances and supplies furnished the tenant to enable him to make and harvest the crop, that at the time the writ of attachment was levied the landlord's lien was in full force and effect on three-fourths of the property, and that the other fourth was owned by the landlord, the court should have directed a verdict for the intervener for the amount due for advances and supplies, awarding title and possession to him for an undivided fourth interest, foreclosing his landlord's lien on the remaining three-fourths, and foreclosing the attachment lien on any remaining interest of the tenant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1363, 1400; Dec. Dig. § 332.*]

6. LANDLORD AND TENANT (§ 328*) — ENFORCEMENT IN GENERAL.

In an action where defendant's landlord intervened and claimed a landlord's lien on property attached which was raised on his farm in 1910, and it appeared that he also held the crop raised in 1909 as security for advances made to the tenant that year, plaintiff, not having attached the 1909 crop, was not entitled to have that applied first to the satisfaction of the landlord's debt.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1388–1392; Dec. Dig. § 328.*]

Appeal from Scurry County Court; Fritz R. Smith, Judge.

Action by Davis Bros., composed of T. C. Davis and others, against Sam Green, in which R. L. McMullen filed a plea of intervention. From the judgment, the intervener appeals. Reversed and remanded.

Taylor & Rosser, of Snyder, for appellant. Wilmeth & Boyd and Payne & Perkins, all of Snyder, for appellee.

GRAHAM, C. J. This suit originated in the county court of Scurry county, by Davis Bros., a mercantile firm, composed of T. C. Davis, W. W. Davis, and J. G. Davis, suing Sam Green on an open and verified account for the sum of $220.55, for goods sold and delivered during the year 1910; the suit having been filed October 22, 1910. On October 26, 1910, plaintiffs caused to be issued a writ of attachment which was levied upon five bales of cotton as the property of the defendant Green. Appellant, R. L. McMullen, filed in said cause his plea of intervention, in which he sued Sam Green for the sum of $517.77, alleged to be due intervener by Sam Green for advances made and supplies furnished Green to enable him to make and harvest a crop during the year 1910, allegation being made that intervener, as landlord, had made said advances and furnished said supplies to said Sam Green as his tenant, allegation being made that intervener as landlord owned one-fourth of the cotton levied upon as his rents and held as landlord's lien on the remaining three-fourths to secure the payment of said $517.77; intervener's pleadings also show that as the cotton levied upon had been ginned and baled under a previous agreement between intervener and Green, Green had delivered the cotton yard receipts therefor to intervener, under an agreement that intervener would sell and dispose of the cotton and control the same, taking his rents out of the proceeds and applying Green's portion thereof to the payment of intervener's debt, paying the remainder, if any, over to Green. Green answered in person, admitting the justness of the debt sued on by the plaintiff in the sum sued for, and also admitting the justness of the debt sued on by intervener in the sum sued for, and also admitting the relationship of landlord and tenant between himself and intervener and that the cotton levied upon was raised upon the rented premises and was subject to the landlord's lien, and further that the cotton levied upon at the time of the levy, and for some time prior thereto, was in the control and possession of intervener to secure the payment of intervener's debt. By supplemental petition and trial amendment, the plaintiff below alleged that intervener held a lien against other cotton belonging to the defendant Green, securing the payment of the debt sued on by intervener, amply sufficient to satisfy intervener's indebtedness, and prayed that intervener be required to exhaust that collateral before being permitted to reap the benefit of his landlord's lien on the cotton levied upon, if in fact such lien existed. A trial before a jury in the court below resulted in a judgment for plaintiffs for their debt in the sum of $220.55, with interest and costs and a foreclosure of their attachment lien on the five bales of cotton levied upon under the writ of at-

tachment as against the defendant and the intervener, also in a judgment for intervener and against the defendant for the sum of $517.77, less a credit of $146.25; the latter sum apparently being the proceeds of three bales of cotton raised by the defendant Green on intervener's premises during the year 1910, and which had not been applied on the indebtedness of intervener.

A motion for a new trial by intervener having been overruled by the trial court, the cause is before us on an appeal prosecuted by intervener alone and has been submitted in this court on various assignments of error, none of which we deem necessary to discuss separately as a result of the conclusion we have reached as to the disposition which should be made of this appeal, but will state that the assignments are sufficient to raise the questions discussed in this opinion. Davis Bros. have filed in this court their motion to strike out and disregard the statement of facts, based on the proposition that the statement of facts should have been copied into the transcript and not brought up separately as has been done in this case.

[1] The record shows that the statement of facts was filed in the trial court in this cause on May 16, 1911, which was before the act of 1911 (Laws 1911, c. 119) became operative, while the transcript on which the cause is submitted in this court shows to have been made out by the clerk of the trial court on July 3, 1911, after the act of March 31, 1911, had become operative. We are rather of the opinion that as the transcript itself was made out after the act of 1911 became operative, that act would control the manner in which the statement of facts and transcript should come into this court, and if we are correct in this view, we think section 12 of the act approved March 31, 1911, most clearly requires that the statement of facts even in appeals from a county court in civil cases must not be copied in the transcript, but that the original as filed in the court below should be brought to this court.

[2] If, however, the act of 1909, p. 375, were to control, still we think the statement of facts sought to be stricken out has been properly brought into this court, as the original statement of facts filed in the trial court is the one presented to us, and in this latter conclusion we think we are fully sustained by the cases of St. L., S. F. & T. R. Co. v. Wall, 102 Tex. 404, 118 S. W. 131, Vickrey v. Burks, 56 Tex. Civ. App. 421, 121 S. W. 177, and Tyer v. Timpson Handle Co., 135 S. W. 250. For the reasons given, the motion to strike out the statement of facts will be overruled.

On the trial below the following is the entire testimony introduced, as shown by the statement of facts on file in this court:

"The plaintiffs offered in evidence the account of Davis Bros. against Sam Green for the sum of $220.55, duly itemized and sworn to, and same was received in evidence without objection.

"Plaintiffs rested.

"R. L. McMullen, intervener, testified in his own behalf as follows, on direct examination: 'My name is R. L. McMullen, I reside in Snyder, Scurry county, Tex., and own a farm some 12 miles northeast of Snyder in Scurry county, Tex. Sam Green, the defendant in this cause, made a crop on my place during the year 1910 under a contract entered into between Sam Green and myself, wherein Sam Green was to have three-fourths of all cotton and two-thirds of all grain and roughness raised on said farm, and I was to have one-fourth of all cotton and cotton seed, one-third of all grain and roughness raised on said farm, for my rent; and I agreed to furnish Sam Green supplies sufficient to enable him to make and harvest the crop for 1910 on my place. I furnished Mr. Green for the purpose of enabling him to make and harvest his crop supplies to the amount of $517.77, which supplies and advancements were necessary and used by him, for the purpose of making and harvesting the 1910 crop. (The items and checks for same were introduced, but are not here given for the reason the amount is accepted as correct by Sam Green furnished.) I have bills and checks in evidence herein, and that Sam Green now owes me for said amounts of money and for said articles mentioned. That it was the understanding and agreement between Sam Green and myself that I was to have an undivided one-third interest in all grain and roughness raised on my farm by him and one-fourth of all the cotton and cotton seed thereon raised, and that he was to take the cotton to the gin, have same ginned and placed in the cotton yard at Snyder, Tex., and deliver to me the tickets or cotton receipts for same, which he did, and I was to hold the cotton, to have absolutely control and management of same, and to sell said cotton, and to deduct my rents and the amount owed me by said Sam Green for supplies and advancements made him for the purpose of making and harvesting said crop of 1910. That I received the tickets from him to the cotton attached by Davis Bros. as the cotton of Sam Green immediately after said cotton was placed in the cotton yard, and have held those tickets continuously ever since. That I have examined the cotton now on the cotton yard, same being cotton attached by Davis Bros., and find that same is damaged, but do not know how much.' R. L. McMullen, on cross-examination, testified in substance the same as on direct.

"Sam Green, defendant, testified in behalf of intervener as follows on direct examination: 'My name is Sam Green. I am the defendant in this case wherein Davis Bros. are plaintiffs, and I acknowledge that the debt claimed by Davis Bros. against me for the sum of $220.55 is just and unpaid, and

the only reason I have not paid same was because I was unable to do so. I made a crop on land belonging to R. L. McMullen during the year 1910 with R. L. McMullen as my landlord. My contract with Mr. McMullen was the usual rental contract, whereby I was to give Mr. McMullen one-third of grain and roughness and one-fourth of all cotton raised on his farm on which I raised a crop for the year 1910, which farm is located some 12 miles northeast of Snyder, in Scurry county, Tex. Mr. McMullen furnished me supplies and advances necessary for the purpose of making a crop in the year 1910 to the amount of $517.77, which amount I now owe Mr. McMullen, and which I have agreed to pay him. During the year 1910 in the marketing of my cotton, I had the cotton ginned and placed in the cotton yard, taking the public weigher's certificate for same, and, after receiving said certificates, I delivered same to Mr. McMullen with the understanding that he was to have said cotton in his absolute control, possession for the purpose of marketing same. He to market said cotton, and after receiving the money for same was to apply the proceeds of said cotton, after deducting his rents, to my indebtedness to him for said supplies and advances and to turn over to me the remainder if there should be any.' Sam Green testified on cross-examination as follows: 'Yes, I owe Mr. McMullen for supplies and advances made for the year 1909; also, I don't know just how much. He holds 15 bales of the 1909 crop as collateral security for same. The cotton attached was put in the cotton yard in October, 1910, by me.'

"R. L. McMullen testified in rebuttal in his own behalf as follows: 'Yes. Mr. Green owes me for advances and supplies which I furnished him to make that year. He owes me about $750. I shipped 15 bales of the 1909 crop to Galveston. It is not yet sold, and I hold it as security for the debt. The $750 does not include the indebtedness for 1910, which is $517.77 in addition. The cotton attached by Davis Bros. had been off of my premises for more than 30 days, when I intervened in this suit; but I had the cotton yard receipts for said cotton, and have them now. (He here produces the receipts issued to Sam Green by the public weigher, T. C. Jenkins, for said five bales of cotton attached.) Green turned these over to me soon after he delivered the cotton on the yard and before the attachment was levied, or issued. I am holding said cotton for a better market. The market value of said attached cotton was, when attached, 14 cents per pound. The cotton tickets were issued to Sam Green.'

"Geo. Garner testified for intervener as follows on direct examination: 'My name is George Garner. I examined the five bales of cotton attached herein. I am a cotton buyer and have been for several years. The said cotton is weather damaged about $1 per bale.' Geo. Garner testified on cross-examination as follows: 'The grade of the cotton on an average is fair middling. If it were not damaged it would be worth now about $13.95 on the present market.'

"Intervener rested.

"Plaintiff then introduced the attachment writ levied on five bales of cotton as the property of Sam Green by Davis Bros. on the following described bales: Bales Nos. 504, 564, 830, 1,516, and 1,681, weighing respectively 480, 515, 510, 514, and 501 pounds. Date of levy, October 26, 1910."

[3] The evidence shows uncontradictedly that the cotton levied upon was raised by appellee, Green, on the premises of appellant, McMullen, during the year 1910, and that the relation of landlord and tenant existed between said appellee and appellant, and that there was an unpaid indebtedness by said appellee to appellant for advances and supplies furnished him by appellant to enable him to make and harvest the crop, and we think the record also conclusively shows that the landlord's lien provided by statute was in full force and effect as to the cotton levied upon at the time the writ of attachment was levied. The record also shows without contradiction that appellant, McMullen, as landlord owned a one-fourth interest in the cotton levied upon, and that the remaining three-fourths was, as against the attachment levy, subject to appellant's landlord's lien to secure the payment of the advances made by appellant to his tenant and which were then unpaid.

[4] The statement of facts, as we view it, fails to even intimate that the portion of the crop raised in 1909 and that was unsold and in the possession of appellant at the time of the institution of this suit, which the record shows was held by him to secure him for advances made Green for the year 1909 as his tenant, was held by appellant, or that he had any lien thereon to secure the payment of the indebtedness sued upon by appellant in this case, and under the law no landlord's lien could exist as against a crop raised in 1909 for advances made or supplies furnished the same tenant during the year 1910, nor could any other kind of lien exist against tenant's portion of the crop raised in 1909, for his indebtedness to the landlord accruing in 1910, except as a result of an express lien, which the statement of facts in this case does not show existed.

[5] But for the fact that this case appears to have been tried below, throughout, upon an erroneous idea of the law applicable to the issues presented by the pleadings and the proof, we would feel warranted in reversing and rendering this case on the evidence as shown by the statement of facts. The case will be reversed, with the suggestion that, if on another trial the evidence is as shown by the

statement of facts on file before us, the trial court direct a verdict for the plaintiff as against Green for the debt sued on, for the intervener as against Green for the amount shown to be due, for advances made and supplies furnished during the year 1910, to award title and possession to intervener for an undivided one-fourth interest in the five bales of cotton levied upon as his rents thereon and a foreclosure of his landlord's lien on the remaining three-fourths of the five bales of cotton levied upon to secure the payment of the supplies furnished and advances made and a foreclosure of the attachment lien in plaintiff's favor on the remainder, if any.

[6] Under the statement of facts before us, the question of marshaling assets is in no wise raised, and the cotton shown to be in the hands of intervener and which was raised in 1909 is wholly immaterial and can in no way affect the rights of the parties to this suit.

Under the record as we view it, the plaintiffs, had they sought to appropriate to their debt Green's interest in the cotton raised in 1909, should have taken steps by attachment or otherwise to appropriate Green's interest therein, subject to the landlord's rights therein to the payment of their debt, and having failed to do so, under the record as it appears before us, they failed to show any right to have the cotton raised in 1909 considered for any purpose in this case.

There are some questions raised by the assignments not necessary to dispose of in the foregoing opinion; but they are such, we think, as will not arise upon another trial, and they are therefore not discussed.

For the reasons indicated, the judgment of the trial court will be reversed, and the cause remanded, and it is so ordered.